**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

PORTIA LAMBERT,
o/b/o LINDA LAMBERT,                     :          Case No. 3:10-cv-435

    Plaintiff,                              :
                                                    District Judge Walter H. Rice
                                         :          Magistrate Judge Michael J.  Newman
 vs.
                                         :

MICHAEL J. ASTRUE,
Commissioner of the Social               :
Security Administration,
                                         :
    Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED FOR AN IMMEDIATE AWARD OF WIDOW'S INSURANCE BENEFITS FOR THE PRESCRIBED PERIOD BEGINNING ON OCTOBER 15, 1999 AND ENDING MAY 31, 2000; AND (3) THIS CASE BE CLOSED.**

---

    This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g).  At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Linda Lambert (hereinafter "Claimant" or "Widow") was not disabled, and therefore unentitled to Widow's Insurance Benefits.

    This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. # 13), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

## I.  BACKGROUND

### A.  Procedural History

Claimant filed her application for Widow's Insurance Benefits in June 1999, alleging that she was disabled due to a leaky heart valve, congestive heart failure, lung disease, asthma, a hernia, and arthritis.  Tr. 61-63, 90.  Claimant's alleged onset date of disability was October 15, 1999 -- the date of her fiftieth birthday.[2]  Tr. 74, 1039.  The prescribed period for benefits ended on May 31, 2000.

Following initial administrative denials of Claimant's application, a hearing was held before ALJ Daniel Shell (tr. 33-57), who determined in November 2001 that Claimant was not disabled. Tr. 10-24.  Thereafter, the Appeals Council denied Claimant's request for review.  Tr. 7-8.

On March 3, 2003, Claimant filed an action in this Court seeking judicial review of the Commissioner's decision.  *Lambert v. Comm'r of Soc. Sec.*, No. 3:03-cv-065.  Subsequently, the Court remanded the matter to the Commissioner for further administrative proceedings consistent with its opinion entered on March 6, 2006.  *Id.* at docs. 31, 33, 35, 36; *see also* tr. 522-42.

Claimant died on October 10, 2005.  In order to continue pursuing this claim, Claimant's daughter, Portia Lambert (hereinafter "Plaintiff" or "Portia"), was substituted as Plaintiff in this action on April 16, 2006.  Tr. 558-59, 585-585A.

On remand, the Appeals Council vacated ALJ Shell's decision and remanded the matter to him for further proceedings consistent with the Court's Order.  Tr. 543-45.  The ALJ held two hearings:  the first, on March 21, 2007, involved no testimony; the second, on April 22, 2008,

---

[2]When she initially filed her application for Widow's Insurance Benefits, Claimant alleged that she had been under a "disability" since January 1, 1990.  Tr. 61-63.  On October 16, 2001, Claimant amended her alleged onset of disability to October 15, 1999.  Tr. 74, 1039.

included testimony given by Portia, a medical expert, and a vocational expert.  Tr. 1022-70.  On

August 29, 2008, the ALJ issued an unfavorable decision.  Tr. 490-99.  The Appeals Council denied

Plaintiff's request for review, tr. 482-84, thereby making the ALJ's non-disability finding the

Commissioner's final decision.

     The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.     The applicant was the unmarried widow of the deceased insured worker and attained the age of 50 as of the amended onset date. The widow met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2.     The prescribed period ended on May 31, 2000.

3.     The widow did not engage in substantial gainful activity since her amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

4.     Through May 31, 2000, the end of the proscribed period, the widow had the severe impairments of restrictive lung disease, morbid obesity, lumbar spine spondylolisthesis, left knee arthritis, a history of congestive heart failure under good control, and a history of sarcoidosis in remission (20 CFR 404.1520(c)).

5.     The widow did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6.     After careful consideration of the entire record, I find that during the prescribed period the widow had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for climbing of ladders, ropes, and scaffolds, or work in high humidity or temperature extremes, defined as less than 20 degrees or more than 75 degrees.  She could have stood and/or walked for 30 minutes at a time for a total of four hours during an eight hour day. She needed to avoid more than occasional climbing of tamps and stairs, balancing, stooping, and kneeling.  She needed to avoid work around toxic fumes and environmental pollutants, such as those found in paper manufacturing or in an automotive or plastics factory.

7.  The widow has no past relevant work (20 CFR 404.1565).

8.  The widow was born on October 15, 1949 and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended disability onset date (20 CFR 404.1563).

9.  The widow had a limited education and was able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not an issue because the widow did not have past relevant work (20 CFR 404.1568).

11. Considering the widow's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could have performed (20 CFR 404.1560(c) and 404.1566).

12. The widow was not under a disability, as defined in the Social Security Act, through May 31, 2000 (20 CFR 404.1520(g)).

Tr. 493-99.

Plaintiff filed an appeal on two grounds: 1) the ALJ's decision is unsupported by substantial evidence, in that the ALJ erroneously rejected the opinion of Claimant's treating physician; and 2) the ALJ erred in his evaluation of Claimant's pain and credibility by ignoring the effects of her morbid obesity and her subjective symptoms such as shortness of breath.

The issue before the Court is whether the ALJ erred in finding that Claimant was not disabled between October 15, 1999 and May 31, 2000, and therefore unentitled to Widow's Insurance Benefits for that period of time.

**B.  Claimant's Vocational Profile and Testimony**

Claimant was 50 years old on her amended disability onset date, and was therefore considered "closely approaching advanced age." *See* 20 C.F.R. § 404.1563.  Claimant only

4

completed the eighth grade. Tr. 36-37. She never worked outside the home, and had no past relevant work. Tr. 36, 91, 497.

At the administrative hearing in October 2001, Claimant testified that she suffered from sarcoidosis, asthma, congestive heart failure, chest pain, gout, and dizziness. Tr. 37-50. She testified that she had been hospitalized over 100 times for her breathing problems. Tr. 40. She claimed that she was experiencing chest pain two or three times per week, and noted that her chest pain was more frequent than it had been in the past. Tr. 37. She also testified that using her arms too much caused her to cough, which in turn caused her chest to hurt. *Id.*

Claimant testified that her scardosis and asthma "interact" with one another, stating "[i]f one attacks, then the other one flares up." Tr. 41. In the week prior to the hearing, Claimant was hospitalized with bronchial asthma and arrhythmia. Tr. 38-39. Claimant testified that too much exertion from activities such as brushing her hair, showering, and walking caused fatigue and shortness of breath. Tr. 37, 43-46. Claimant noted that she was winded from simply walking from the elevator to the hearing room. Tr. 43. She also claimed that she had spells of dizziness two or three times per week because of a lack of oxygen, and that the dizziness caused her to fall on several occasions. Tr. 48-49. Because of constant pain and swelling in her legs, Claimant testified that she had to elevate her feet two or three times per day. Tr. 46-47. She also regularly experienced swelling in her hands and fluid in her lungs. Tr. 43-46.

Claimant testified that she was extremely limited in her ability to do household chores. When she washed dishes, she had to sit on a stool. Tr. 45. She was dependant upon her children to help brush her hair, do her laundry, shop for her groceries, and maintain her property. Tr. 44-45.

By the time of the administrative hearing on April 22, 2008, Claimant had passed away. Consequently, Portia testified in her mother's place and substituted as Plaintiff in the case. *See* tr. 1034. Portia told the ALJ that from the late-1990's until the time of her mother's death -- and particularly around the time of her fiftieth birthday -- her mother was morbidly obese, regularly short of breath, unable to walk long distances, unable to sit for long periods of time, and often in constant and considerable pain. Tr. 1042. Portia also testified that her mother often experienced shortness of breath from walking, using her arms, and standing for more than a few minutes. Tr. 1043-44.

Portia testified that she or her sisters washed her mother's hair. *Id*. While her mother could do small things such as washing a few dishes, Portia or her sisters generally did the household chores. *Id*. Her mother did no laundry, sweeping, mopping, or cleaning of the house, and she never went to the grocery store. *Id*.

Portia further testified that she visited with her mother several hours a day during the time period in question. Tr. 1044-45. During that time, her mother would sit, usually with her feet elevated, and would typically only get up to go to the restroom. Tr. 1044-45. Whenever Portia or her sister took their mother outside of the house, Claimant had to be in a wheelchair. Tr. 1045. Portia also testified that her mother moved in with her in 2002 because "she just eventually got to the point where she just couldn't be alone." Tr. 1046.

### C.  Medical Source Opinions

As the ALJ noted, the voluminous medical record contains 115 medical exhibits and spans many years before (beginning in 1981) and after the pertinent time period. Claimant's medical history includes emergency room visits and hospitalizations for a number of ailments, including breathing difficulties and heart-related complaints. *See* tr. 493.

6

In their respective briefs, the parties have sufficiently provided informative and detailed descriptions of Claimant's medical history, as well as the opinions of treating, reviewing, and consultative medical sources. *See* doc. 8 at 4-9; doc. 12 at 2-5. Consequently, additional detailed discussion of the record here would be unnecessarily duplicative. Rather, a general identification of the medical sources at issue will help frame further review.

### 1. Imtiaz Ahmed, M.D. ("Dr. Ahmed") -- Primary Care Physician

Dr. Ahmed was Claimant's primary care physician from January 1998 through February 2002. Tr. 392-414, 461-66, 634-41. In addition to handling Claimant's general care, Dr. Ahmed treated her for complaints of back pain, shortness of breath, and fatigue. *Id*. He diagnosed various ailments including coronary artery disease ("CAD"), chronic obstructive pulmonary disease ("COPD"), obesity, gastritis, arthritis, back pain, pedal edema, and anxiety. *Id*. The record further shows that Dr. Ahmed prescribed a number of medications throughout his treatment. *Id*.

In October 2001, Dr. Ahmed completed a medical assessment at the request of the Social Security Administration ("SSA") where he reported that Claimant suffered from dyspnea (shortness of breath), COPD, CAD, chest pain, pedal edema, and obesity. Tr. 477-81. He opined that Claimant could lift and carry no more than ten pounds; stand and/or walk less than two hours in an eight hour day; and be on her feet for only fifteen to twenty minutes at a time. *Id*. Dr. Ahmed indicated that Claimant's ability to sit was limited to three to four hours per day, and only one to two hours of sitting at a time. Tr. 478. He concluded that Claimant was incapable of performing even sedentary work on a sustained basis due to her impairments. Tr. 477-81. Dr. Ahmed further concluded that Claimant was "totally & permanently disabled secondary to her multiple medical problems." Tr. 481.

7

### 2. Paul Boyce, M.D. ("Dr. Boyce") -- Medical Expert

Dr. Boyce testified at the April 22, 2008 administrative hearing as SSA's non-examining medical expert.  Tr. 1046-66.  Dr. Boyce engaged in a lengthy description of the record.  Tr. 1047-52.  He opined that Claimant's primary issues were problems with her heart and obesity.  Tr. 1047.  He noted that Claimant's weight ranged from 250-270 pounds, which fell into the category of "morbid obesity."  *Id.*  Dr. Boyce noted that Claimant's echocardiograms varied greatly regarding the severity of her cardiac valvular disease. Tr. 1048.

Dr. Boyce testified that he did not believe Claimant to have CAD.  Tr. 1053.  He found no evidence of significant COPD, and found no objective reason for Claimant's chest pain.  *Id.*  Dr. Boyce opined that Claimant could lift 20 pounds occasionally and 10 pounds frequently; stand/walk 30 minutes at a time for a total of 4 hours; sit an unlimited amount; avoid climbing ladders, ropes or scaffolds; occasionally climb rams or stairs, balance, stoop, crouch and kneel; avoid temperature extremes and humidity; and avoid toxic fumes and particulates. Tr. 1065.

## II.  APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence and if the correct legal criteria were employed by the ALJ. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

8

As noted by the Sixth Circuit, "[e]ven if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746.  Failure to do so will typically require reversal, notwithstanding that the ALJ's opinion is supported by substantial evidence. *Id.*

If the Commissioner's decision is unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  42 U.S.C. § 405(g);  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

**B.  Establishing the Existence of a Disability**

To qualify for disabled widow's insurance benefits, a claimant must be unmarried; between the ages of fifty and sixty; be the spouse of a wage earner who dies fully insured;  file an application for such benefits; and be under a disability as defined in the Social Security Act.  42 U.S.C. § 402(e). To establish disability, a claimant for disabled widow's insurance benefits must prove that he or she suffers from a physical or mental impairment of such severity as to prevent the claimant from engaging in his or her previous work and, considering the claimant's age, education, and work experience, any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends.  *Id.*  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment

or combination of impairments; if not, then a finding of non-disability is made and the inquiry ends. *Id.* Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* If the impairment meets or equals any within the Listings, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). If a claimant suffers from an impairment which meets or equals one set forth in the Listings, the Commissioner is to render a finding of disability without consideration of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. *Id.* If the individual is unable to perform the relevant past work, then a *prima facie* case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983).

A claimant has the burden of establishing disability by a preponderance of the evidence. *Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990). Once a claimant establishes a *prima facie* case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment, and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). To rebut a *prima facie* case, the Commissioner must come forward with particularized proof of the claimant's individual capacity to perform alternate work considering the claimant's age,

education, and background, as well as the job requirements.  *O'Banner v. Sec'y of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978).

### C.  Deference Accorded to Treating Physicians

It is well-established that the findings and opinions of treating physicians are entitled to substantial deference.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  Furthermore, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley*, 582 F.3d at 406 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).

As noted by the Sixth Circuit, "[t]he treating physician doctrine is based on the assumption

that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). Moreover, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07 (citing Soc.Sec.Rule 96-2p). As reasoned by the Sixth Circuit, there are several purposes underlying the "good reasons" rule:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544.

## III. OPINION AND ANALYSIS

### A.    The Commissioner Has Not Complied With the Court's March 6, 2006 Remand Order

This is the second time Claimant has filed an action with this Court based upon this same claim for Widow's Disability Benefits; as noted *supra*, the first action resulted in a remand to SSA because of deficiencies in the ALJ's rejection of the opinion of Claimant's treating physician, Dr. Ahmed, in his November 19, 2001 decision.

In the Report and Recommendation issued by Magistrate Judge Sharon L. Ovington on January 26, 2006, the Court detailed the reasons necessitating reversal of the Commissioner's initial non-disability determination.  *Lambert v. Comm'r of Soc. Sec.*, No. 3:03-cv-065, doc. 31, PAGEID 116-22.  The Court found that the ALJ erred as a matter of law by:  (1) failing to address the level of deference he ultimately accorded Dr. Ahmed's opinion; (2) failing to properly weigh that opinion according to Social Security regulations; and (3) failing to explain the reasons underlying his decision to accord less than controlling weight to that opinion.  *Id.*  The Court reasoned:

> Dr. Ahmed's opinion was critical to Lambert's application for Widow's Insurance Benefits because his opinion, if fully credited, established that Lambert was under a disability.  This is so because the Medical-Vocational Guidelines mandate the conclusion that Lambert is under a disability due to her age (52) at the time of the ALJ's decision and in light of Dr. Ahmed's opinion that she was unable to perform sedentary work.  *See* 20 C.F.R. Subpart P, Appendix 2, § 201.09.

*Id*. at PAGEID 116.

The Remand Order, signed by District Judge Walter H. Rice on March 6, 2006, fully adopted the Report and Recommendation of Magistrate Judge Ovington:

> The Report and Recommendations filed on January 26, 2006 (Doc. #31) is ADOPTED as modified by the Supplemental Report and Recommendations filed on February 10, 2006 (Doc. #33);

13

   *  *  *

This matter is REMANDED to the Commissioner of the Social Security Administration under sentence four of 42 U.S.C §405(g) for further consideration consistent with the Report and Recommendations;

*Lambert*, doc. 35, PAGEID 155.

The Court's Order unequivocally directed the Commissioner to weigh the opinion of Dr. Ahmed in accordance with SSA's own regulations. However, this case is now before the Court because, in his August 29, 2008 opinion, the ALJ once again failed to properly weigh Dr. Ahmed's opinion under SSA regulations.

In finding that the opinion of the non-examining medical expert was entitled to greater weight than that of Dr. Ahmed, the ALJ stated: "Using the factors mandated by 20 C.F.R. [§] 404.1527, I must give very substantial weight to the opinions of the medical expert, since he is familiar with the disability program and has had the opportunity to review and evaluate the entire documentary record." Tr. 497. While the ALJ documented the level of deference he gave to the medical expert -- and cited the appropriate regulation ALJs are to employ when evaluating opinions of treating physicians -- no mention is made whatsoever of the amount of weight he accorded to Dr. Ahmed's opinion. Given the outcome of his decision, it is safe to assume that the ALJ accorded little or no deference to Dr. Ahmed's opinion. However, the ALJ's decision gives no indication whether any weight was given at all, and provides no explanation as to why less weight was given to Dr. Ahmed's opinion than to that of the medical expert.

In addition, the ALJ provided no analysis weighing Dr. Ahmed's opinion under the factors mandated by 20 C.F.R. § 404.1527 -- such as the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician -- before rejecting it. *See* 20 C.F.R. § 404.1527(d)(2); *Blakley*, 582 F.3d at 406.

14

Thus, any reader of his opinion would be left wondering whether the ALJ accorded some weight, little weight, or no weight to Dr. Ahmed's opinion, and would be clueless as the reasons underlying the accorded level of weight. *Cf. Blakley*, 581 F.3d at 406-07 (citing Soc. Sec. Rule 96-2p).

Moreover, the ALJ's handling of the Court's Remand Order is perplexing. At the April 22, 2008 hearing, the ALJ told Plaintiff's counsel, on the record:

> The only issue that I see is the treating physician and that seems to be a theme that we're seeing quite a bit from the Federal Court, and quite honestly I see this as a very interesting way of doing business that we have to get back. We're over 1,000 cases behind. If I deny case it takes me at least seven, eight months to get a Decision written and out of here. **I don't see this as being anything more than an academic exercise and that's what we're going to go through today.**

Tr. 1041 (emphasis added). The Court did not remand this case in 2006 for an "academic exercise." The case was remanded because the ALJ failed to follow the Social Security regulations in analyzing the opinion of Claimant's treating physician. The Court's March 6, 2006 Order clearly laid out the errors of the Commissioner's initial determination, as well as the steps SSA needed to take to comply with its own regulations. However, the Court's Order was ignored.

Furthermore, and more troubling in the Court's view, after the ALJ's August 2008 decision was issued, SSA had the opportunity to remand the matter to the ALJ a third time with an explicit instruction to follow the regulations -- and to comply with the Court's March 6, 2006 Order -- but chose not to do so. Therefore, the Appeals Council's adoption of the ALJ's August 29, 2008 opinion -- which yet again failed to properly weigh the opinion of Claimant's treating physician -- evidences SSA's failure to comply with the Court's March 6, 2006 Order.

**B.**   **The ALJ's Decision to Give "Very Substantial Weight" to the Medical Expert and a Lesser, Undeterminable Amount of Weight To Claimant's Treating Physician is Unsupported by Substantial Evidence**

The Court finds the opinion of Claimant's treating physician, Dr. Ahmed -- regarding the nature, severity, and resulting limitations of her impairments -- to be well-supported by medically-acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the record. *See Blakley,* 581 F.3d at 406.  Based upon several grounds, the Court finds that the decision of the ALJ to reject the opinion of Dr. Ahmed is unsupported by substantial evidence, and further finds that the ALJ erred by not according controlling weight to the opinion of Claimant's treating physician. *See* 20 C.F.R. § 404.1527(d)(2).

First, the ALJ has deprived Claimant of her right to a fair process for more than a decade by repeatedly ignoring the requirements of 20 C.F.R. § 404.1527 by failing to and to properly consider the factors mandated by the regulations, and adequately explain the weight given to Dr. Ahmed's opinion as well as the reasons underlying the accorded weight.  The Sixth Circuit has long held that "an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given ***denotes a lack of substantial evidence***, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (internal citations omitted)(emphasis in original); *see also Wilson*, 378 F.3d at 546.  Such is the case here.

Second, the ALJ's favoring of the medical expert's opinion -- and determination that it was entitled to "very substantial weight" -- is tenuous at best.  As noted above, the ALJ failed to comply with the Commissioner's regulations, which required him to evaluate the opinions of non-treating medical experts under the same regulatory factors -- such as the supportability, consistency, and

16

specialization of the medical source -- that apply to treating medical source opinions.  *See* Soc. Sec. Ruling ("SSR") 96-6p, 1996 WL 374180 at *2-3 (interpreting, in part, 20 C.F.R. § 404.1527(f)).  The ALJ discussed the medical expert's opinions, but did not analyze his opinion under the factors mandated by the regulations.  Furthermore, the ALJ's stated reason for favoring the medical expert over the treating physician -- i.e. that the medical expert is "familiar with the disability program," tr. 497 -- is hardly an acceptable basis for favoring the opinion of a non-examining physician over a treating physician who has actively serviced a claimant's medical needs over a number of years and whose opinion is supported by the record.

Third, as discussed *supra*, although the ALJ did not analyze the nature of Dr. Ahmed's treatment relationship with Claimant, the supportability of his opinion, or the consistency of the opinion with the record as a whole, the record makes clear that Dr. Ahmed was responsible for coordinating Claimant's care with the other specialists of record, and that he was well-aware of Claimant's diagnoses and treatments provided by her other health care providers.  *See*  20 C.F.R. § 404.1527(d)(2); *Blakley*, 582 F.3d at 406.  Based on his long-term treatment relationship with Claimant, Dr. Ahmed reasonably opined that Claimant was unable perform the exertional requirements of even sedentary work on a sustained basis.  Tr. 481.  This opinion was wrongly accorded minimal or no deference by the ALJ.  Dr. Ahmed's opinion is supported by objective medical data and is consistent with the other evidence of record.

The record shows that Claimant suffered from a number of serious medical problems for more than a decade prior to the relevant time period in this case.  Claimant was first diagnosed with sarcoidosis in 1981.  Tr. 121.  In 1986, a chest x-ray showed an enlarged heart.  Tr. 128.  In 1992, an echocardiogram documented a dilated left ventricle with a moderately diminished left ventricular

function.  Tr. 133.  In 1994 and 1995, Claimant was hospitalized at least three times for cellulitis.

Tr. 138-45, 146-47, 148-53, 156-57, 158-62.  In August 1995, Claimant was diagnosed with CAD

and unstable angina, status post bronchial asthma and COPD, and proptosis of the left eye possibly

related to her sarcoidosis.  Tr. 169-76.  She was hospitalized in 1997 due to acute congestive heart

failure, primary cardiomyopathy, exogenous obesity and bronchial asthma.  Tr. 134-36.   An

echocardiogram at that time documented severely diminished left ventricular function.  Tr. 137.

Claimant's condition was no better during the time period immediately preceding and

following her prescribed period.  For example, Dr. Ahmed's treatment notes show elevated blood

pressure on July 13 and August 12, 1998, with bruits and lower extremity edema as well as a few

rhonchi in the lungs.  Dr. Ahmed noted lower extremity edema in his records on October 6, 1998

and November 13, 2000; wheezing and rhonchi were noted in listening to her lungs on August 25

and 30, 2000. *See generally* tr. 392-414 , 461-66.  Claimant's obesity was well-documented

throughout Dr. Ahmed's treatment.  *Id*.

Other medical evidence in the record paints a similar picture.  For instance, Claimant treated

with cardiologist Akber Mohammed, M.D. from 1999 through at least 2001. Tr. 415-19, 457-60.

In May 1999, an echocardiogram was abnormal, revealing a dilated left ventricle with preserved LV

systolic function; mild enlargement of the right atrium; mild aortic stenosis; trace to mild mitral

regurgitation, mild to moderate aortic insufficiency, and moderate to severe tricuspid regurgitation;

and mild pulmonary hypertension.  Tr. 284.

In November, 1999, Claimant was examined by Damian M. Danopulos, M.D. ("Dr.

Danopulos") at the request of SSA.  Tr. 300-16.  Examination revealed Claimant's lungs were clear

with some diminishment in chest excursion.  There was a brawny discoloration in both of Claimant's

lower legs.  Both knees revealed painful motion with some limitation of active range of motion.  Tr. 303, 309.  An x-ray of the left knee showed osteoarthritis.  There was marked thickening and spurring of the patella. The lumbar spine was painful to pressure and there was some limitation in lumbar spine motion.  Dr. Danopulos performed pulmonary function studies that showed a mild degree of restrictive lung disease without an obstructive component. He described Claimant's complaints of effort-related shortness of breath as "due to Pickwickian Syndrome" which was "triggered from her morbid obesity."  Tr. 304.  Dr. Danopulos concluded that Claimant' ability to do work related activities was restricted from all of the "objective findings" of restrictive lung disease, first degree lumbar spine spondylolisthesis, left knee arthritis, morbid obesity, and her history of previous sarcoidosis in remission. Tr. 305.

The medical record, as corroborated by the testimony of Portia and Claimant at the hearings, supports Dr. Ahmed's opinion regarding Claimant's true functional limitations.  As discussed *supra*, substantial evidence is determined from the record as a whole. *See Garner*, 745 F.2d at 388.  An "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  However, the ALJ's favoring of the medical expert's opinion is based upon a selective review of the evidence, as well as an unsupported rejection of Dr. Ahmed's opinion and neglect of Claimant's obesity.

Claimant correctly argues that the ALJ never specifically addressed the limitations caused by her shortness of breath and obesity.  SSR 02-01p, 2002 WL 34686281 (Sept. 12, 2002), explains the Administration's policy and protocol on the evaluation of obesity.  "Obesity is a complex,

chronic disease characterized by excessive accumulation of body fat." *Id*. The Ruling recognizes Body Mass Index (BMI) as one of the indicia of an individual's degree of obesity. *Id*. BMIs of 30.0-34.9 (Level I), 35.0-39.9 (Level II), and 35.0-39.9 (Level III) represent the classification of the degree of obesity. *Id*. Level III also includes BMIs above 40, and it is considered extreme obesity because of the potential for developing obesity-related problems. *Id*. Under this system of classification, Claimant was morbidly obese. When examined by Dr. Danopulos for the SSA in November 1999, Claimant was 5'1" and weighed 251 pounds. Tr. 302.

SSR 02-01p also provides that at step two of the five step evaluation, obesity may be considered "severe" alone or in combination with another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-01p[6]. SSR 02-01p explains that a claimant's obesity must be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps. The Ruling states:

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. . . . An assessment should also be made of the effect of obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis . . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-01p. *See also* 20 C.F.R. § 404.1523 (explaining that if the SSA finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout

the disability determination process"). In addition, SSR 02-01p is binding on all components of the Administration. *See* 20 C.F.R. §402.35(b)(1); *Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006). Moreover, an adjudicator must consider the impact of a claimant's obesity on her residual functional capacity ("RFC"). SSR 02-01p.

However, the ALJ did not assess Claimant's obesity in the manner contemplated by SSR 02-01p in his decision. Likewise, there is no indication that Claimant's obesity received the attention contemplated by SSR 02-01p, especially with respect to other illnesses. For example, Claimant's pulmonary function studies showed a "very severe" combined impairment in lung function and obesity was suggested as the likely source of the restrictive component. Tr. 222, 231. In addition, Dr. Danopulos, the SSA's consulting evaluator, found Claimant's effort-related shortness of breath credible. Tr. 300-05. He attributed this shortness of breath to Pickwickian Syndrome "triggered from her morbid obesity." Tr. 304. Dr. Boyce also noted that Claimant was morbidly obese throughout the period in question. Tr. 1047.

As her primary care physician, Dr. Ahmed treated Claimant for a number of ailments over a period spanning four years and interacted with other physicians who provided treatment. He was also well-aware of Plaintiff's limitations based upon the combination of her ailments. Substantial evidence supports Dr. Ahmed's opinion that Plaintiff was unable to do even sedentary work over a sustained period of time. That opinion was reasonable; supportable, given the factors mandated by SSA regulations; corroborated by the evidence in the record and testimony at the hearings; and entitled to greater deference than the ALJ accorded. *See* 20 C.F.R. § 404.1527(d)(2). Substantial evidence simply does not support the ALJ's rejection of Dr. Ahmed's opinion. Nor does it support according "very substantial weight" to the non-treating medical expert.

Plaintiff's arguments -- that the ALJ erroneously failed to accord appropriate deference to Claimant's treating physician and that the ALJ's decision is unsupported by substantial evidence -- are both well taken.  In addition, given the history of this case, the ALJ's repeated failure to accord proper weight to Claimant's treating physician is more than a *de minimis* procedural violation or "harmless error."  *See Blakley*, 581 F.3d at 409; *Wilson*, 378 F.3d at 547.  Accordingly, the Court recommends reversal of the ALJ's opinion.

### C.  The Court Recommends An Order Of Benefits Granted

When, as here, the non-disability determination is unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 100.

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).  The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041.  Such is the case here.

As recounted herein, the proof of disability in this case is great and yet another remand will serve no purpose other than delay.  This case has been delayed for ten years due to the ALJ's failure to follow SSA regulations.  The Court is troubled by this delay.  Pursuant to this Court's 2006

Remand Order, the Commissioner already had one opportunity to correct the errors that occurred in connection with the first hearing, and has failed to do so; in fact, the ALJ committed the exact same errors a second time. Furthermore, the medical evidence, including the opinions of Claimant's treating physician (which are consistent with the findings of other medical sources), compels the conclusion that Claimant was, in fact, disabled as of the alleged onset date through May 31, 2000.

It is the Court's view, therefore, that the record needs no further development, and more administrative proceedings would serve no useful purpose. The opinion of Dr. Ahmed is entitled to controlling weight as Plaintiff's treating physician in light of the evidence discussed *supra*. Given that all substantial factual issues have been resolved and the opposing evidence is severely lacking in substance, substantial evidence supports Claimant's claim of disability for the period beginning October 15, 1999 and ending on May 31, 2000. *See Faucher*, 17 F.3d at 176.

## IV. RECOMMENDATIONS

For the foregoing reasons, Plaintiff's assignments of error are well taken. The Court finds the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. The Court also recommends that this case be remanded for an immediate award of benefits, as the record overwhelmingly establishes Claimant's entitlement to Widow's Insurance Benefits for the prescribed period beginning October 15, 1999 and ending on May 31, 2000.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    The decision of the Commissioner be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED;**

2.    This case should be **REMANDED FOR AN IMMEDIATE AWARD OF DISABILITY WIDOW'S INSURANCE BENEFITS FOR THE PRESCRIBED PERIOD BEGINNING ON OCTOBER 15, 1999 AND ENDING MAY 31, 2000;** and

3.    This case be **TERMINATED** upon the docket of the Court.


January 9, 2012                                    s/**Michael J.  Newman**
                                                   United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

       Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).